UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUBAREZ AHMED, individually;

       Plaintiffs,

                                         No.

-v-                                         Hon.

ERNEST WILSON, in his individual
capacity; and CITY OF DETROIT,
a municipal corporation;

       Defendants.

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, MUBAREZ AHMED, individually, by and through his attorneys, MUELLER LAW FIRM, by WOLFGANG MUELLER, and files his Complaint against the Defendants in this civil action, stating unto this Court as follows:

1.    This is an action for damages brought pursuant to 42 U.S.C. §§1983 and 1998, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, against Defendants, ERNEST WILSON, in his individual capacity, and CITY OF DETROIT, a municipal corporation.

2.    Jurisdiction is founded upon 28 U.S.C. §1331 and 28 U.S.C. §1343.

3.     Forum is proper based on the situs of the incident, which occurred in the CITY OF DETROIT.

4.     At all pertinent times Plaintiff, MUBAREZ AHMED, was a United States citizen.

5.     At all pertinent times, Defendant, ERNEST WILSON ("WILSON"), was employed as a Sergeant by the Detroit Police Department ("DPD"), a department of the defendant, CITY OF DETROIT ("DETROIT"), and was acting under color of law.

6.     At all pertinent times, DETROIT was a municipal corporation formed under the laws of the State of Michigan and was the employer of WILSON.

## GENERAL ALLEGATIONS

7.     On February 9, 2001, at approximately 1:25 p.m., Lavelle Griffin and LaTanya White were shot and killed in their car at the intersection of Kirkwood and Lumley Street in the City of Detroit.

8.     During the course of the early police investigation, the victims' friends and family members identified alternate suspects, including a man, Roderick Tolbert, who went by the nickname, *"Little Jay."*  One witness, Shemeka Bryant, a friend of Lavelle Griffin, told WILSON that she strongly suspected Little Jay in the killing because Griffin had LaTanya White set up

Little Jay to be robbed.  Griffin had previously recruited Ms. Bryant to set up Little Jay but she refused.  Griffin told Shemeka Bryant that he thought Little Jay was trying to kill him.

9.    WILSON had no further leads until the next evening when an anonymous tip was received that identified the shooter by a nickname, *"Spaghetti."*  Police then focused their case entirely on Plaintiff.

10.    On February 14, armed with nothing more than an anonymous tip from an unreliable source who claimed that an Arabic man nicknamed "Spaghetti" committee the murder with "Little Jay" in the car, and verification by the Drug Task Force confirming that there was an Arabic man who frequented southwest Detroit with the nickname "Spaghetti," WILSON had Plaintiff arrested.

11.    On February 15, 2001, one day after Plaintiff's arrest, the Officer-in-Charge ("OIC") of the case, Sgt. Ernest Wilson, brought an eyewitness, Izora Clark, to view a lineup that included Plaintiff.

12.    Immediately before the live lineup, WILSON showed Ms. Clark a photograph of Plaintiff and told her this was the man they believed committed the murder and was in the lineup. WILSON also told Ms. Clark that another witness had identified Plaintiff.

3

13.     WILSON's statement about another witness identifying Plaintiff as the shooter was completely false; there was no other eyewitness who identified anyone as the shooter, much less Plaintiff.

14.     After being shown the photograph describing Plaintiff as the suspected killer and having been told by WILSON that Plaintiff was the killer, Ms. Clark was asked to view the live lineup and see if she could identify the individual she saw shoot the two victims.

15.     The showing of the single photo of Ahmed was both unduly suggestive and unnecessary, as Plaintiff was already in custody, having been arrested without a warrant the previous day.

16.     Not surprisingly, after the tainted procedure, Ms. Clark identified MUBAREZ AHMED as the shooter.

17.     Plaintiff was the only person in the live lineup who wore a beard.

18.     On February 16, 2001, WILSON filed his Investigator's Report/Request for Warrant with the Wayne County Prosecutor's Office.

19.     Prosecutor (now a 36th District Court judge) Kenneth King relied on the false statements and fabricated evidence contained in the Investigator's Report and recommended that Plaintiff be charged with the double-murder of Mr. Griffin and Ms. White.

4

20.    WILSON, acting in accordance with Michigan law, presumably swore to facts supporting probable cause before 36th District Court Judge Miriam Martin-Clark, who signed the arrest warrant.  WILSON's sworn testimony would have necessarily omitted the facts surrounding the unduly suggestive photographic identification procedure; otherwise, no reasonable judge would have authorized the warrant.

21.    WILSON later testified at a suppression hearing and explained his evidence supporting probable cause.  He testified about Ms. Clark's identification of Plaintiff as the shooter, his receiving an anonymous tip, and that Plaintiff's alleged girlfriend, Julie Wheeler, owned a vehicle that matched the description of the vehicle used by the shooter.  WILSON testified that Wheeler's car, a red Ford Taurus, had been brought in for inspection.

22.    On January 3, 2002, Judge Vonda Evans denied Plaintiff's motion to suppress the witness identification and emphasized the information regarding Julie Wheeler's connection to Plaintiff and the car driven by the shooter.  Judge Evans stated:

> First of all, and the thing that's most striking to the Court is this general reference in the reddish area of this vehicle. That this vehicle is, in fact, linked to the defendant's girlfriend, which as the prosecution indicated whether he drives it or not or chooses not to, has access to a vehicle that is similar to it. The fact of the relationship between him and the girlfriend. That that was

5

significant enough that if he wanted to get this vehicle that he could. That, in fact, this vehicle was seen at the scene, whether it was red or whether it was burgundy. There was this Taurus.

Judge Evans continued, *"Then how is it, is that just coincidence that it's found out that Ms. Wheeler, who is the girlfriend of the defendant, also drives this type of red or reddish type of car?"*

23.    WILSON never disclosed to the prosecutor at any time before or during trial that he had shown Ms. Clark a photograph of Plaintiff before the live lineup and told Clark that Plaintiff was the suspect in the murder, thereby tainting the integrity of the identification process.

24.    WILSON never disclosed to the prosecutor at any time before or during trial that he lied when he told Ms. Clark that another witness had identified Plaintiff as the shooter, thereby tainting the integrity of the identification process.

25.    WILSON never disclosed to the prosecutor at any time before or during trial that he had photographs in his file of Plaintiff's ex-girlfriend, Bobbi Ruff, who owned a vehicle similar to the vehicle involved in the shooting, and that Ms. Ruff dated Little Jay.

26.    The evidence withheld from the prosecutor would have been apparent to any reasonable officer as being material exculpatory or

6

impeachment ("*Brady*") evidence that must be turned over to the prosecutor.

27.    Had WILSON told the prosecutor before trial the evidence set forth above, the prosecutor would have had a constitutional "*Brady*" obligation to provide that evidence to the defense, as it clearly impeached the credibility of the lone eyewitness, Izora Clark, destroyed probable cause, and impugned the integrity of WILSON's entire investigation.

28.    Knowledge of the *Brady* and fabricated evidence would have allowed Plaintiff's defense attorney to call Julie Wheeler as a witness to impeach WILSON's testimony about the integrity and thoroughness of his investigation.  It would have also caused the prosecutor and judge to question whether probable cause existed for the prosecution in the first instance.

29.    Izora Clark was the sole witness who tied Plaintiff to the crime.

30.    Izora Clark's identification of Plaintiff in a lineup, the result of WILSON's unconstitutional and illegal conduct, was the centerpiece of the State's case.  In his rebuttal argument, the prosecutor stated, *"This case is all about Ms. [Clark].  I told you that from the beginning.  I'm maintaining that."*  TT, 2028-02 at 145.  He further stated, *"[i]f you don't believe Ms. [Clark], you have to find him not guilty."*  TT, 2-28-02 at 146.

7

31.    The falsely-procured evidence clearly affected the decision of the jury, as it returned with a conviction.

32.    On March 5, 2002, Plaintiff was convicted of two counts of second-degree murder and two counts of felony firearm.

33.    On March 25, 2002, Plaintiff was sentenced to 40-60 years imprisonment for the two murders plus 4 years for the felony-firearm convictions.

34.    But for Defendant's conduct, as set forth below, there would have been no probable cause for Plaintiff to be charged with the murder of Lavelle Griffin and LaTanya White.

35.    In 2017, after 15 years of wrongful incarceration, investigation by investigator Scott Lewis, a former television investigative reporter, and the University of Michigan Innocence Clinic, led by David Moran, uncovered the egregious police misconduct described above.

36.    In 2018, the Wayne County Prosecutor's Office's Conviction Integrity Unit ("CIU"), led by Valerie Newman, conducted an independent investigation into the Mubarez Ahmed case.

37.    The CIU investigation revealed that the Homicide Unit, led by WILSON, had possessed photographs of Bobbi Ruff, Plaintiff's former girlfriend and paramour of Little Jay, posing next to a car similar to that

8

described by witnesses.  The photographs were not turned over to the prosecutor.

38.    On August 15, 2018, based on the newly-discovered evidence, the Wayne County Prosecutor's Office stipulated to an Order vacating Plaintiff's conviction and granting a new trial.

39.    On Friday, August 17, 2018, Mubarez Ahmed was released from the Ionia Correctional Facility in Ionia, Michigan, on the order of Wayne County Circuit Court Judge Vonda Evans and transported back to the hellhole that is the Wayne County jail.

40.    On October 26, 2018, charges were dismissed by the Wayne County Prosecutor's Office and MUBAREZ AHMED, now 48, was finally set free.  **Plaintiff's wrongful incarceration in jail and prison totaled 6,464 days, or 17 years, 8 months, and 13 days.**

## DETROIT'S CUSTOMS AND POLICIES THAT LED TO PLAINTIFF'S WRONGFUL CONVICTION

41.    In and before February 9, 2001, the date of the double-murder, DETROIT, by and through its final policymakers, had a custom and policy to authorize, condone, tolerate and approve illegal and unconstitutional actions by Detroit Police Department officers and command staff.

42.    The illegal and unconstitutional actions and practices included but were not limited to:

9

a.    Conducting inadequate investigations into serious felony cases, such as murder, in order to expeditiously close cases, and affirmatively choosing not to develop or pursue actual leads or evidence;

b.    Knowingly and deliberately fabricating evidence in order to manufacture probable cause to arrest and/or strengthen a case for conviction;

c.    Knowingly staging overly suggestive lineup procedures in order to strengthen a case or manufacture probable cause for an arrest;

d.    Knowingly tolerating *Brady* violations committed by investigators in order to improve conviction rates on felony cases;

e.    Knowingly and deliberately choosing not to conduct formal tests and constitutionally valid identification procedures because investigators knew that the results would contradict evidence against their target suspect.

43.    Defendant, DETROIT, through its final policymakers, further maintained a custom and policy of failing to adequately train, supervise, and/or discipline officers concerning proper and constitutionally adequate evidence collection, analysis, and disclosure, including their duty not to fabricate evidence and their affirmative duty to disclose apparent exculpatory and impeachment evidence.

44.    DETROIT's customs and policies, set forth above, demonstrated deliberate indifference to the constitutional rights of its

10

citizens, including MUBAREZ AHMED, and were the moving force behind

the individual Defendant's constitutional violations.

45.    Due to the misconduct of Defendants, WILSON and DETROIT,

as set forth below, Plaintiff, MUBAREZ AHMED, suffered the following

injuries and damages:

  a. Suffering a deprivation of liberty by being wrongfully incarcerated and imprisoned for a period of over 17½ years, including significant time spent in solitary confinement;

  b. Severe emotional distress for the period from his arrest to the present, including, but not limited to: the emotional distress of being charged with second-degree murder and felony-firearm, facing a sentence of 44- to 60-years in prison; and being wrongfully convicted of crimes the Defendants knew he did not commit;

  c. Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

  d. Fright, shock, indignity, humiliation, outrage, indignity and embarrassment of being wrongfully charged and imprisoned for murder;

  e. Loss of enjoyment of daily activities including, but not limited to, seeing his child grow up;

  f. Not being able to attend the funerals of family members, including his beloved mother;

  g. Physical injuries suffered in prison;

h.  Loss of employment opportunity, past income and future earning capacity;

i.  Loss of his close relationship with his minor daughter;

j.  Physical injuries while being imprisoned, including being assaulted;

k.  Loss of employment opportunity, past income and future earning capacity;

l.  Restricted and/or complete loss of all forms of personal freedom and physical liberty, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, recreational activities, and personal expression;

m.  Many of Plaintiff's injuries and damages are likely to be permanent;

n.  Other damages which may be revealed through discovery.

46.  Due to the conduct of Defendants, WILSON and DETROIT, as set forth below, the true killer has never been caught and the victim's family has never received true closure.

## COUNT I

## *"BRADY"* VIOLATIONS BY DEFENDANT WILSON

47.  Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

12

48.     At all times, Plaintiff had constitutional rights of due process and a fair trial, guaranteed by the 5th, 6th, and 14th Amendments, to be free from police officers not disclosing to the prosecutor material exculpatory and/or impeachment evidence.

49.     Defendant, WILSON, knowingly violated his unwavering legal duty (*"Brady"* duty) to disclose to the prosecutors all material evidence where its exculpatory and impeachment value was apparent, by failing to tell the prosecutor the following:

   a.   The fact that he showed witness, Izora Clark, a photograph of Plaintiff immediately before the live lineup and told her that Plaintiff was the person who the police believed was the murderer; thereby irreparably tainting the integrity of the identification process.  This undisclosed fact would have been exculpatory evidence and impeached Ms. Clark and Defendant's trial testimony;

   b.   The fact that he told witness, Izora Clark, that another witness identified Plaintiff as the shooter when no one had done so; thereby irreparably tainting the integrity of the identification process. This undisclosed fact would have been exculpatory evidence and impeached Ms. Clark and Defendant's trial testimony;

   c.   The fact that he had photographs of Plaintiff's ex-girlfriend with her car that matched the description of the automobile driven by the murderer.  This undisclosed fact would have impeached Defendant's trial testimony and greatly weakened the integrity of the entire police investigation;

13

d.  The fact that WILSON had driven by witness, Izora
Clark's, house on a dozen occasions to intimidate
her into cooperating with her false identification of
Plaintiff.  This undisclosed fact would have
impeached Ms. Clark and Defendant's trial
testimony;

e.  The fact that his identification of Julie Wheeler,
whom he described as Plaintiff's girlfriend who
owned a vehicle similar to the vehicle involved in the
murder, was completely made-up and untrue.  This
undisclosed fact would have been exculpatory
evidence and impeached Ms. Clark and Defendant's
trial testimony and further weakened the integrity of
the entire police investigation; and

f.  The fact that Julie Wheeler's vehicle had purportedly
been examined by police when, in fact, it had not,
and Julie Wheeler had never spoken to the police.
This undisclosed fact would have been exculpatory
evidence and impeached Ms. Clark and Defendant's
trial testimony and further weakened the integrity of
the entire police investigation.

50.  Defendant's deliberate and knowing failure to disclose the

above-referenced evidence to the prosecutor resulted in material

exculpatory and impeachment evidence not being turned over to Plaintiff's

defense counsel, in violation of the State's *Brady* obligations.

51.  WILSON's *Brady* violations resulted in Plaintiff not receiving a

fair trial, described as "a trial resulting in a verdict worthy of confidence."

*Kyles v. Whitley*, 514 U.S. 419, 434, (1995).  Had WILSON disclosed the

*Brady* evidence, there would have been no arrest, much less a conviction.

14

A re-trial that included the *Brady* evidence would result in a directed verdict or acquittal.

52.     The *Brady* evidence cited above would have been apparent to any reasonable officer acting in good faith.

53.     MUBAREZ AHMED'S right to be provided with material exculpatory and impeachment evidence ("*Brady*" evidence), was clearly established before February 9, 2001.  *See Moldowan v. City of Warren*, 578 F.3d. 351, 382 (6th Cir. 2009) ("In fact, at least three circuits recognized prior to August 1990, the earliest possible date for Detective Ingles' involvement in the case, that this right was clearly established.")

## COUNT II

## FEDERAL MALICIOUS PROSECUTION BY DEFENDANT WILSON

54.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

55.     At all times, Plaintiff had a constitutional right, guaranteed by the 4th Amendment, to be free of illegal seizure and continued detention without probable cause, based on false statements and/or material omissions which were knowingly or recklessly made, in order to manufacture probable cause.

56.    Defendant, WILSON, as Officer-in-Charge, was under a constitutional duty to make truthful statements to the prosecutor and magistrate judge to establish probable cause for an arrest warrant.

57.    Defendant, WILSON, influenced or participated in the initiation of criminal prosecution when he deliberately and knowingly supplied false information and omitted material information which showed a reckless disregard for the truth in requesting an arrest warrant, swearing to facts in support of probable cause, and testifying at the pre-trial suppression hearing, which was material to a finding of probable cause.

58.    WILSON's false statements and material omissions included:

   a.    The invention of "Julie Wheeler" as Plaintiff's girlfriend who owned a car similar to that described by the eyewitness to the crime;

   b.    Not telling any prosecutor or judge that he staged the unduly suggestive single-photo identification procedure;

   c.    Not telling any prosecutor or judge that he repeatedly drove by Izora Clark's house to intimidate her into continuing with the false identification; and

   d.    Other false statements or omissions of material facts that were knowingly or recklessly made, that will be discovered during the course of this lawsuit.

59.    MUBAREZ AHMED'S right not to be seized and continuously detained without probable cause, based upon a police officer's deliberate

16

and knowing fabrication of evidence and false statements and material

omissions to prosecutors and magistrate judges, guaranteed by the 4th and

14th Amendments, was clearly established before February 14, 2001. *See*

*Gregory v. Louisville,* 444 F.3d 725, 744 n. 8 (6th Cir. 2006) (knowing

fabrication of evidence to manufacture probable cause violates

constitutional rights at least as early as 1992); *Franks v. Delaware*, 438

U.S. 154 (1978).

## COUNT III

## DUE PROCESS VIOLATION BY DEFENDANT WILSON RELATING TO THE SINGLE-PHOTO IDENTIFICATION PROCESS AND LINEUP

60.     Plaintiff incorporates by reference each preceding paragraph as

if fully stated herein.

61.     At all times, Plaintiff had constitutional rights of due

process and a fair trial, guaranteed by the 5th, 6th, and 14th

Amendments, to be free from police officers conducting unduly

suggestive and unnecessary single-photo identification procedures

and live lineups.

62.     Defendant, WILSON, violated Plaintiff's constitutional

rights described above by the following misconduct:

    a.    Conducting an unduly suggestive and unnecessary
          single photograph identification procedure for Izora
          Clark;

17

b.   Telling Izora Clark that the person in the photo was the person they recently arrested and was the shooter;

c.   Telling Izora Clark that another individual identified Plaintiff as the shooter;

d.   Staging an unduly suggestive live lineup for witness, Izora Clark; and,

e.   Intimidating the witness, Izora Clark, which was material to a finding of probable cause that Plaintiff had committed the crime of murder and would otherwise have been lacking and clearly affected the judgment of the jury.

63.   MUBAREZ AHMED'S right to be free from witness identification resulting from an unduly suggestive lineup, a violation of Plaintiff's due process rights, was clearly established before February 14, 2001. *See Stovall v. Denno,* 388 U.S. 293 (1967).

64.   MUBAREZ AHMED'S right to be free from false witness identification resulting from witness intimidation by police officers was clearly established before February 14, 2001.  *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997) (Government misconduct that amounts to substantial interference with a witness's free and unhampered determination to testify may be deemed a violation of due process).

18

## COUNT IV

## FABRICATION OF EVIDENCE BY DEFENDANT WILSON

65.    Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

66.    At all times, Plaintiff had a constitutional right, guaranteed by the 4th Amendment, to be free of illegal seizure and continued detention based on intentionally fabricated evidence used to cause an arrest or conviction.

67.    Defendant, WILSON, violated Plaintiff's constitutional rights described above by the following misconduct:

   a.    Inventing "Julie Wheeler" as Plaintiff's girlfriend who owned a car similar to that described by the eyewitness to the crime and had come to the police station to have her car inspected by police, when Ms. Wheeler had never spoken to, or had her vehicle inspected by, police, and did not know Plaintiff;

   b.    Conducting an unduly suggestive and unnecessary single photograph identification procedure for Izora Clark;

   c.    Telling Izora Clark that the person in the photo was the person they recently arrested and was the shooter;

   d.    Telling Izora Clark that another individual identified Plaintiff as the shooter;

   e.    Staging an unduly suggestive live lineup for witness, Izora Clark; and,

f.   Intimidating the witness, Izora Clark, which was material to a finding of probable cause that Plaintiff had committed the crime of murder and would otherwise have been lacking and clearly affected the judgment of the jury.

68.   MUBAREZ AHMED'S right not to be deprived of liberty and due process based upon fabrication of evidence by a government official acting in an investigatory capacity, including a police detective, was clearly established before February 9, 2001. *See Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997).

## COUNT V

## DEFENDANT, CITY OF DETROIT'S, "MONELL" LIABILITY

69.   Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

70.   Defendant, DETROIT, created policies, practices and customs, as set forth above, including a failure to provide adequate training to its police officers, including Defendant, WILSON, which demonstrated "deliberate indifference" to the constitutional rights of its citizens, and was the moving force behind the individual Defendant's violations of Plaintiff's constitutional rights.

71.   As a direct and proximate result of WILSON's willful violation of Plaintiff's constitutionally-protected rights, Mubarez Ahmed was detained

20

without probable cause, charged with crimes he did not commit, wrongfully

convicted and jailed and imprisoned for over 17 years, and deprived of his

liberty, causing him to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiff, MUBAREZ AHMED, prays the following:

- Compensatory damages in a minimum amount of Fifty-Two Million Five Hundred Thousand Dollars ($52,500,000.00);

- Punitive damages pursuant to 42 U.S.C. §1983 as to Defendant, WILSON, in a minimum amount of Fifty-Two Million Five Hundred Thousand Dollars ($52,500,000.00); and

- Costs and statutory attorney fees, and other such relief as the Court deems appropriate.

MUELLER LAW FIRM


s/Wolfgang Mueller
WOLFGANG MUELLER (P43728)
Attorneys for Plaintiffs
34405 W. Twelve Mile Rd., Ste. 200A
Farmington Hills, MI 48331
(248) 489-9653
wolf@wolfmuellerlaw.com

Dated:  December 12, 2018

## **JURY DEMAND**

Plaintiff, by and through his attorneys, MUELLER LAW FIRM,

demands a jury trial in this matter.

MUELLER LAW FIRM

s/Wolfgang Mueller
WOLFGANG MUELLER (P43728)
Attorneys for Plaintiff
34405 W. Twelve Mile Rd., Ste. 200A
Farmington Hills, MI 48331
(248) 489-9653
wolf@wolfmuellerlaw.com

Dated: December 12, 2018