UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUBAREZ AHMED,

     Plaintiff,

                                           Case No. 18-13849

v.

                                           Hon. George Caram Steeh

ERNEST WILSON,

     Defendant.

_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 38)

Defendant Ernest Wilson seeks partial summary judgment in this action brought pursuant to 42 U.S.C. § 1983. The court has reviewed the record and has determined that its decision would not be aided by oral argument.

BACKGROUND FACTS

In 2002, Plaintiff Mubarez Ahmed was convicted of murdering Lavelle Griffin and LaTanya White in a drive-by shooting. He was sentenced to 30-60 years in prison. In 2018, Ahmed's conviction was revisited by the Wayne County Conviction Integrity Unit and the University of Michigan Law School's Innocence Clinic. After this investigation revealed new evidence that cast doubt on the integrity of the proceedings, the Wayne County

-1-

Prosecutor's Office moved to vacate Ahmed's conviction and dismiss the charges. Ahmed was released from prison in 2018 after serving more than seventeen years.

The facts leading up to Ahmed's conviction are as follows. On February 9, 2001, White and Griffin were shot in their vehicle while at an intersection in the City of Detroit. The shooting was witnessed by Izora Clark, who was also at the intersection in her car. She described the shooter as looking Hispanic, with long sideburns, and stated that he was in a burgundy vehicle. Another witness, Gerald Henderson, described the vehicle as a red 1997-99 Ford Taurus.

The officer in charge of the murder investigation was Defendant Ernest Wilson. The day after the shooting, he received an anonymous tip that the shooter was an Arabic man nicknamed "Spaghetti." Wilson learned from police sources that "Spaghetti" was Mubarez Ahmed.

Days later, Ahmed's former girlfriend, Bobbi Ruff, met with Wilson and evidence technician Eugene Fitzhugh. Wilson asked Fitzhugh to perform a gunshot residue test on Ruff's vehicle, a red 2000 Ford Taurus. The test result was negative.

As part of the 2018 Conviction Integrity Unit investigation, Ruff provided a statement. According to Ruff, she told the police officer at the

vehicle inspection that she and Ahmed had stopped dating two months before the shooting, that they had a "very bad break-up," and that he did not have access to her car. ECF No. 40-8.

Wilson did not mention Bobbi Ruff in his progress notes. Rather, he incorrectly identified Ahmed's girlfriend, and the owner of the tested vehicle, as Julie Wheeler. Wilson testified that he obtained this information from another officer, who learned it from an FBI task force member. Wheeler states that she never met Ahmed or loaned him her vehicle, which was a red, 1998 Ford Contour. Wheeler also denies meeting with police or ever having her car inspected as part of a homicide investigation. ECF No. 40-11.

On February 14, 2001, Wilson had Ahmed arrested. Izora Clark was brought to the police station to view a lineup with Ahmed in it. First, Clark was provided with mugshots to review. While she was doing so, Wilson showed her a photograph of Ahmed: "All of a sudden he walked over to me and he say, here, you don't have to look no more, you don't have to look no more. This is the motherfucker. He's the motherfucker that did it, and he showed me the picture and he say, I know this motherfucker did it, because I have another witness that said he did it." ECF No. 40-10 at PageID 700. Wilson told Clark not to tell anyone that he showed her the

photo of Ahmed.  *Id.*  Clark subsequently picked Ahmed out of the lineup. *Id.* at PageID 701.

Clark testified that she would not have picked Ahmed out of the lineup if she had not seen his photo and had not been pressured by Wilson. *Id.*  Clark shared her concerns with Wilson before Ahmed's preliminary examination, but he told her that she needed to "stay with the program."  *Id.* According to Clark, Wilson stopped by her house once every week or two weeks prior to Ahmed's trial.  *Id.* at PageID 702.  "He said he was just coming to check on me, make sure I was okay . . . ."  *Id.*  Clark testified that she was afraid of Wilson and that she lied when she identified Ahmed as the shooter at his preliminary examination and trial.  *Id.* at PageID 702, 708.

Prior to trial, Ahmed moved to suppress the lineup identification, arguing that he had been arrested without probable cause.  Wilson testified at the hearing, over which Judge Vonda Evans presided.  Wilson stated that the information leading to Ahmed's arrest included Clark's description, the tip about "Spaghetti," and the fact that Ahmed's girlfriend, Julie Wheeler, owned a red car similar to the one driven by the shooter.  ECF No. 40-12 at PageID 726-30, 735-36.  Recognizing that the anonymous tip did not in itself establish probable cause, Judge Evans relied heavily on the

fact that Ahmed had access to Wheeler's vehicle to deny his motion. *Id.* at PageID 750, 756-57 ("Then how is it, is that just coincidence that it's found out that Ms. Wheeler, who is the girlfriend of the Defendant, also drives this type of red or reddish type car?").  She testified that the alleged relationship between Ahmed and Wheeler and the description of Wheeler's car "was central to me at that time in allowing that case to go forward."  ECF No. 40-17 at PageID 827.

After a jury trial, Ahmed was convicted of two counts of second-degree murder and two counts of felony firearm.  Once the conviction was vacated and the charges were dismissed, Ahmed brought this action against Wilson in his individual capacity.  The complaint alleges four causes of action against Wilson: Count I, *Brady* violations; Count II, malicious prosecution; Count III, violation of due process as a result of single-photo identification process; and Count IV, fabrication of evidence.  Wilson seeks partial summary judgment on Counts I, II, and IV.

## LAW AND ANALYSIS

I. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In reviewing a motion for summary

judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. A "mere scintilla" of evidence is insufficient to meet this burden; the evidence must be such that a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252.

II. Analysis

Defendant acknowledges that there is a question of fact regarding the photo identification procedure and does not pursue summary judgment with respect to Count III. Defendant seeks summary judgment on three issues: 1) the physical lineup was not unduly suggestive as a matter of law; 2) Wilson did not intimidate Clark; and 3) Wilson did not fabricate the Julie

Wheeler evidence.[1]  In doing so, Defendant chooses pieces of evidence to challenge, rather than addressing the legal claims pleaded by Plaintiff.  The flaw of this approach is that none of Plaintiff's claims are solely premised on the evidence Defendant seeks to challenge.  In other words, assuming Defendant is correct that the physical lineup is not unduly suggestive, that Wilson did not intimidate Clark, and that Wilson did not fabricate the Julie Wheeler evidence, Defendant does not explain how it follows that Plaintiff's claims of malicious prosecution, *Brady* violations, and fabrication of evidence are subject to dismissal.  Plaintiff relies on other evidence to support these claims, including the Clark photo identification process and the Bobbi Ruff evidence, which Defendant does not address.  Defendant's motion does not acknowledge all of the material facts alleged by Plaintiff.  As a result, Defendant has failed to sustain his burden to demonstrate that he is entitled to summary judgment.

Defendant also resists Plaintiff's presentation of four different causes of action, arguing that Plaintiff's complaint boils down to one legal claim.  Defendant cites no persuasive or binding authority for this proposition, relying on *Burley v. Baltimore Police Dep't*, 422 F. Supp.3d 986, 1030 (D.

---

[1] In his response brief, Plaintiff states that he will not pursue the allegation that the physical lineup was unduly suggestive at trial.  Therefore, the court will consider the claim abandoned.

Md. 2019). In *Burley*, the court determined that the plaintiff's allegation that the police had planted evidence was better understood as a fabrication of evidence claim rather than a *Brady* claim, and found the two claims "duplicative." *Id.* The Sixth Circuit has rejected such an approach, however, noting that different causes of action may share the same factual premise. *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006) ("It is not the role of this Court to restrict Plaintiff's choice of viable legal theories."). *See also Mills v. Barnard*, 869 F.3d 473, 485 (6th Cir. 2017) ("The district court combined the fabrication claim and the withholding claim into one, but this was in error."). Indeed, the Sixth Circuit has analyzed *Brady*, fabrication, and malicious prosecution claims separately, as they each involve different legal elements. *See id.; Jackson v. City of Cleveland*, 925 F.3d 793, 813-20 (6th Cir. 2019), *cert. denied,* 140 S.Ct. 855 (2020) (fabricated witness statement supported *Brady*, fabrication of evidence, and malicious prosecution claims). Defendant's failure to undertake an analysis of each of Plaintiff's claims is fatal to his motion.

  A. <u>*Brady* Claim</u>

  For example, Defendant does not squarely address Plaintiff's *Brady* claim. In *Brady v. Maryland*, the Supreme Court held that the prosecution's suppression of material evidence favorable to the accused violates due

process. 373 U.S. 83 (1963). The duty to disclose favorable evidence includes exculpatory and impeachment evidence, and applies to the police as well as the prosecutor. *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). "*Brady* claims have three elements: '[1] the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.'" *Jackson*, 925 F.3d at 814 (quoting *Strickler*, 527 U.S. at 281-82). "To show prejudice, Plaintiffs must show that the allegedly suppressed evidence was 'material;' in other words, 'that there is a reasonable probability that the suppressed evidence would have produced a different verdict.'" *Id.* at 815 (quoting *Strickler*, 527 U.S. at 280-81). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In determining the materiality of the suppressed evidence, the court considers it "collectively, not item by item." *Id.*

Plaintiff contends that the following exculpatory or impeachment evidence was withheld by Wilson: (1) Wilson showed Clark a photo of Ahmed and told her he was the one who committed the murders; (2)

-9-

Wilson drove by Clark's house on almost a weekly basis to "check on her" before the trial; (3) Julie Wheeler was not Ahmed's girlfriend and her vehicle was not examined by police; and (4) Ahmed's former girlfriend Bobbi Ruff brought her vehicle in to be examined by police and told them that Ahmed did not have access to her car.

     Defendant argues that Wilson driving by Clark's house to check on her does not amount to witness intimidation. But Plaintiff is not alleging a stand-alone witness intimidation claim. Rather, Plaintiff asserts that this evidence, in combination with other evidence withheld by Wilson, reflects on his credibility and should have been disclosed. Wilson's practice of "checking on" Clark – after he showed her a photo of Ahmed, told her Ahmed was the murderer, and said not to tell anyone that he showed her the photo – could reasonably be viewed as an attempt by Wilson to ensure that Clark stayed on message.

     Defendant also argues that the Julie Wheeler evidence is not subject to disclosure under *Brady*, because Ahmed would have known that Wheeler was not his girlfriend and that he did not have access to her car. "[T]here is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source."

-10-

*Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). Ahmed would not have known, however, that Wheeler was not the one investigated – a fact bearing on Wilson's credibility and the soundness of the investigation. Moreover, even assuming that the failure to disclose the falsity of the Julie Wheeler evidence was not a *Brady* violation, Plaintiff's *Brady* claim nonetheless survives. Defendant does not dispute that neither the Izora Clark photo identification evidence nor the Bobbi Ruff evidence was produced, that this evidence was favorable to Ahmed, or that it was material. Accordingly, Defendant has not satisfied his burden of demonstrating that summary judgment is proper on Plaintiff's *Brady* claim.

      B. <u>Fabrication of Evidence</u>

The Due Process Clause of the Fourteenth Amendment is also "violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Jackson*, 925 F.3d at 815 (citation omitted). Plaintiff alleges that Wilson fabricated evidence by steering Clark toward identifying Ahmed in the lineup and by testifying that Wheeler was Ahmed's girlfriend and owned a red car similar to the one driven by the shooter. Wilson responds by arguing that he did not "invent" Julie Wheeler, but relied upon information he received from the FBI. There is a question of fact, however, regarding

-11-

whether Wilson knew that the information he received was incorrect. The evidence technician testified that Wilson was present, along with the owner of the car, at the vehicle inspection. ECF No. 40-7 at PageID 667. The owner of the car was Bobbi Ruff, who told the police officers present that Ahmed did not have access to her car. ECF No. 40-8. Although Wilson testified that he did not meet the vehicle owner, it is for the jury to assess his credibility in this regard.

Moreover, for the purpose of this motion, Defendant does not dispute Plaintiff's allegation that he fabricated evidence by steering Clark toward identifying Ahmed in the lineup. Clark's identification of Ahmed was the centerpiece of the prosecution's case and clearly affected the decision of the jury. Defendant has not demonstrated that summary judgment is proper with respect to Plaintiff's fabrication of evidence claim.

### C. Malicious Prosecution

A malicious prosecution claim has its underpinnings in the Fourth Amendment. The Fourth Amendment right to be free of unreasonable searches and seizures includes "the right to be free of unjust prosecution." *Jackson*, 925 F.3d at 820. A malicious prosecution claim has four elements: "(1) that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision

to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial seizure; and (4) that the criminal proceeding must have been resolved in the plaintiff's favor." *Id.*

Plaintiff alleges that these elements are met because Wilson participated in or influenced the decision to prosecute Ahmed; there was no probable cause for his prosecution, which was based upon fabricated evidence; he suffered a deprivation of liberty; and the prosecution was resolved in his favor. Defendant presents no analysis whatsoever regarding the elements of Plaintiff's malicious prosecution claim and does not contest Plaintiff's allegations. As such, he has failed to sustain his burden and the court will deny summary judgment as to this claim.

### D. Qualified Immunity

Defendant also argues that he is entitled to qualified immunity, which shields officials from civil liability if their conduct "does not violate clearly established rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, the court analyzes "(1) whether,

considering the allegations in the light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Richmond v. Huq*, 885 F.3d 928, 947 (6th Cir. 2018) (citation omitted).

As discussed above, Plaintiff has alleged sufficient facts to support his *Brady*, fabrication of evidence, and malicious prosecution claims. Therefore, the court must consider whether the rights at issue were clearly established "such that a reasonable official would have understood that his conduct violated the right." *Comstock v. McCrary*, 273 F.3d 693, 711 (6th Cir. 2001). "As the Supreme Court has instructed, we need not find a case in which 'the very action in question has previously been held unlawful,' but, 'in the light of pre-existing law[,] the unlawfulness must be apparent.'" *Id.* at 711 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Defendant does not articulate why he is entitled to qualified immunity with respect to Plaintiff's *Brady*, fabrication of evidence, or malicious prosecution claims. Rather, he asserts that it was not clearly established that he violated the constitution by "checking on" Clark and driving by her house repeatedly prior to trial. Again, Defendant mischaracterizes Plaintiff's claims; Plaintiff does not assert a stand-alone claim for witness

intimidation. Rather, Plaintiff alleges that the evidence of Wilson "checking on" Clark is relevant to his *Brady* and fabrication claims.

Defendant also argues that he is immune because he was entitled to rely on information from the FBI regarding Julie Wheeler. As discussed above, however, there is a question of fact regarding whether Wilson knew that the information he received from the FBI was incorrect.

The question is whether a reasonable official in Wilson's position, faced with the facts as alleged by Plaintiff, would have understood that it was unconstitutional to withhold exculpatory or impeachment evidence and to fabricate evidence. The Sixth Circuit has held that these rights are clearly established and have been for decades. *Jackson*, 925 F.3d at 822-27. In *Jackson*, for example, the court denied qualified immunity for withholding evidence, fabricating evidence, and malicious prosecution, based upon the allegation that the officer had coerced a witness into making a false statement. *Id.* (finding that the rights at issue were clearly established in 1975); see also *Mills*, 869 F.3d at 486-87 (denying qualified immunity on malicious prosecution, fabrication, and withholding evidence claims to DNA analyst who prepared false report). Wilson does not articulate why the result should be different here, when Plaintiff alleges that he pressured Clark into making a false identification, withheld evidence

regarding Bobbi Ruff, and provided false evidence regarding Julie Wheeler. Accordingly, Wilson is not entitled to qualified immunity.

## CONCLUSION

Defendant's motion fails to fulfill the basic requirements of a properly supported motion for summary judgment: to view the facts in the light most favorable to Plaintiff and to address each of the legal elements of Plaintiff's claims.  As a result, Defendant has not sustained his burden of demonstrating that no genuine issue of material fact exists for trial, and Plaintiff has demonstrated that Defendant is not entitled to qualified immunity.

IT IS HEREBY ORDERED that Defendant's motion for summary judgment (ECF No. 38) is DENIED.

Dated:  July 17, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 17, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk